UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LUKE C. TEIXEIRA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-177 |
| | § | |
| DALE WAINWRIGHT, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

Plaintiff Luke C. Teixeira is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated deliberate indifference and retaliation claims against **DR. ISAAC KWARTENG** in his individual capacity. It is respectfully recommended further that the Court **EXERCISE** supplemental jurisdiction over Plaintiff's state law negligence claim against **DR. ISAAC KWARTENG** in his individual capacity. Accordingly, it is respectfully recommended that these federal and state law claims against him be **RETAINED.** The undersigned will order service on this defendant.

The undersigned further recommends that: (1) Plaintiff's claims for money damages against **DALE WAINWRIGHT, LORIE DAVIS, and DONNA SOLLENBERGER** in their official capacities be **DISMISSED** as barred by the

1 / 21

Eleventh Amendment; (2) the Court **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law negligence claims against **TONYA LAWSON AND THE STEP II GRIEVANCE COORDINATOR**; and (3) Plaintiff's claims against the remaining Defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.  PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).  Plaintiff was convicted of two aggravated sexual assault convictions in Gregg County and was sentenced on October 9, 2001 to two life sentences.  Plaintiff's claims in this lawsuit occurred in connection with his current assignment to the McConnell Unit in Beeville, Texas.

On June 24, 2019, Plaintiff filed his original complaint, naming the following officials as defendants: (1) Dale Wainwright, TDCJ Chair; (2) Lorie Davis, TDCJ Director; (3) Donna Sollenberger, Vice President of the CMCH-UTMB; (4) Registered Nurse (RN) Tanya Lawson, Unit Practice Manager; (5) Step II Grievance Coordinator; and (6) Dr. Isaac Kwarteng.  Plaintiff sues Defendants Wainwright, Davis, and Sollenberger in their official capacities and Defendants Lawson, Step II Grievance Coordinator, and Kwarteng in their individual capacities.  Plaintiff claims that

Defendants acted with deliberate indifference to his health and safety and that he has been subjected to retaliation. He also asserts state law claims of negligence. Plaintiff seeks declaratory, injunctive, and monetary relief.

A *Spears*[1] hearing was conducted on July 9, 2019. The following representations were made either at the *Spears* hearing or in Plaintiff's original complaint (D.E. 1): Plaintiff is 48 years old, stands 6'2", and weighs 245 pounds. In December 2017, while housed at the Wynne Unit, Plaintiff broke multiple bones in his left foot. Plaintiff received medical treatment for this injury. Plaintiff also suffers from osteopenia, which is a low calcium deficiency and leaves him susceptible to bone fractures.

Due to the injury sustained in December 2017, Plaintiff walked with the assistance of a medical fracture boot and a cane. On October 22, 2018, Plaintiff's tibia and fibula were x-rayed. No x-rays were taken of Plaintiff's foot at that time. On November 9, 2018, Plaintiff visited the medical department to discuss his work restrictions. Dr. Goyel noted that Plaintiff had no fracture in his foot but that he had been diagnosed with osteopenia. Plaintiff asked Dr. Goyel to remove his work restrictions as Plaintiff wanted to get a certain maintenance job. After reviewing the x-rays and advising Plaintiff about putting too much weight on his foot, Dr. Goyel agreed to remove Plaintiff's work restrictions. Dr. Goyel further changed Plaintiff's temporary bottom bunk/bottom row restrictions to permanent restrictions due to the nature of Plaintiff's injury. Plaintiff did

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

not receive a maintenance job. Plaintiff states he previously had a bottom bunk restriction due to his back problems which began before he hurt his foot.

On or about February 22, 2019, Plaintiff received a notice from the clinic that Dr. Kwarteng had removed Plaintiff's bottom bunk/ bottom row restrictions because Plaintiff had asked for his work restrictions to be removed on November 9, 2018. Dr. Kwarteng determined that continuance of the bottom-bunk/bottom restrictions was inconsistent with the removal of work restrictions so that Plaintiff could work in maintenance. Dr. Kwarteng further based his decision on a chart review and not on an actual examination. Dr. Kwarteng's chart review did not consider Plaintiff's original reason for a bottom-bunk restriction and was based on the October 22, 2018 x-rays that did not include an adequate view of Plaintiff's foot. When the restriction was removed, Plaintiff was still using the medical fracture boot and cane.

TDCJ/UTMB Policy 8.4 allows a provider to remove a medical restriction, no matter which provider assigned it, with only a chart review. This policy further authorizes that physical examination to the be conducted if the offender challenges the removal of a restriction.

After receiving his notice to remove his bottom bunk/bottom row restrictions, Plaintiff immediately wrote Defendants Lawson, Davis, Wainwright, and Sollenberger. Plaintiff informed them of what had happened to him and how Policy 8.4 was abused and in fact unconstitutional. Only Defendant Lawson responded on April 19, 2019, by stating that Dr. Kwarteng was authorized to conduct the review. She further informed Plaintiff that, if he was healthy enough to work in maintenance, he did not need a bottom bunk

restriction. Lastly, she informed Plaintiff that the bottom-bunk restriction was not a stand-alone restriction. Plaintiff believes that work restrictions are separate and distinct from housing restrictions.

On February 22, 2019, Plaintiff requested an evaluation to contest Dr. Kwarteng's removal of his housing restrictions. Medical Provider Echavarry saw Plaintiff on February 27, 2019, but refused to examine Plaintiff. The next day, Plaintiff put in another request to be evaluated. Plaintiff was scheduled to see a provider on March 7, 2019. That same day, Plaintiff was transferred on a temporary basis to the TDCJ Darrington Unit in Rosharon, Texas. Plaintiff, while still in a medical fracture boot, was required to sleep in an upper bunk.

On March 8, 2019, Plaintiff climbed down from the top bunk and experienced excruciating pain. Plaintiff's foot became swollen. He asked for medical attention and was told to wait until he arrived at the next unit. Plaintiff arrived at the Walls Unit later that day on March 8, 2019. The medical department at the Walls Unit refused to see Plaintiff. However, a TDCJ officer saw how swollen Plaintiff's foot was and assigned Plaintiff to a bottom bunk. Plaintiff was subsequently given a temporary bottom bunk restriction at the Walls Unit.

On March 27, 2019, an x-ray of Plaintiff's foot showed that Plaintiff had fractures in his toes that were not inconsistent with climbing down from a bunk. Plaintiff suffers in pain every day and has trouble walking for prolonged periods of time. Plaintiff has issues trusting medical providers because a provider has removed his restrictions on two

occasions without an evaluation. Plaintiff returned to the McConnell Unit on April 3, 2019. Dr. Goyel then restored Plaintiff's bottom bunk restriction.[2]

Plaintiff has been diagnosed with the following conditions which he believes are relevant to any consideration for bottom bunk and bottom row assignments: (1) arthritis in various areas of the body; (2) scoliosis; (3) edema; (4) polyarthralgia in various parts of the body; (5) neuropathy in the left foot; and (6) daily headaches and dizziness. These conditions were part of Plaintiff's record when Dr. Kwarteng removed his restrictions. According to Plaintiff, Dr. Kwarteng had treated Plaintiff on occasions and was aware of his foot issues when he removed the bottom bunk/bottom row restrictions.

Plaintiff believes that Defendants Davis, Wainwright, and Sollenberger are responsible for the implementation and formation of Policy 8.4. According to Plaintiff, these individuals were informed of what had happened to him with regard to the removal of the bottom bunk restrictions and were asked to change Policy 8.4. Plaintiff complains about the failure of Defendants Davis, Wainwright, and Sollenberger to intervene on his behalf.

Plaintiff asserts that Defendant Lawson has a duty to ensure that his formal and informal grievances be relayed for further investigation. Plaintiff further asserts that the Step II Grievance Coordinator has a duty to adequately investigate Plaintiff's grievance and review the record. Plaintiff states that the grievance coordinator did not investigate the issue until thirty days after the Step II response was delivered to Plaintiff on May 19,

---

[2] Plaintiff currently lives in one of the McConnell Unit's dormitories, which consists of two floors and each room with a single bed.

2019. Plaintiff further claims that the Defendants Kwarteng, Lawson, and the Step II Grievance Coordinator acted with negligence against Plaintiff with respect to the removal of his bottom bunk restrictions.

In June 2018, Plaintiff filed a complaint with the Texas Medical Board against Dr. Kwarteng. In that complaint, Plaintiff alleged that Dr. Kwarteng had failed to take any action to help Plaintiff's low white blood cell count. Plaintiff contacted a friend who assisted Plaintiff in finding a nutritional supplement that could help Plaintiff's condition. Plaintiff's complained to the Texas Medical Board, claiming that Dr. Kwarteng had lied about the fact nothing could be done. Plaintiff's complaint was rejected as his allegations were not substantiated.

Plaintiff met with Dr. Kwarteng a month after he had filed his complaint against him. Dr. Kwarteng knew about Plaintiff's complaint before the Texas Medical Board. Plaintiff alleges Dr. Kwarteng became very aggressive with Plaintiff and challenged Plaintiff's assertion that he had lied to Plaintiff. Plaintiff also maintains Dr. Kwarteng retaliated against Plaintiff by: (1) removing his bottom bunk restriction in early 2019; and (2) taking a prescribed nutritional supplement away in September 2018 from Plaintiff that helped to raise his low white blood cell count.

III.   **LEGAL STANDARD**

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.

*See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at

555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV. DISCUSSION

### A. Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment

bars prisoner's suit for money damages against prison officials in their official capacities).

Of the six defendants named, Plaintiff sues Defendants Wainwright, Davis, and Sollenberger in their official capacities. To the extent that Plaintiff sues these defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants Wainwright, Davis, and Sollenberger in their official capacities be dismissed as barred by the Eleventh Amendment.

## B.    Official Capacity Defendants

Plaintiff claims that Defendants Wainwright, Davis, and Sollenberger acted with deliberate indifference by failing to assist Plaintiff after Plaintiff wrote each of them a letter. He further claims that these defendants implemented and enforced an unconstitutional policy, Policy 8.4, which provided the framework by which Dr. Kwarteng removed his bottom bunk restrictions.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Id.* at 303-04. *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

In this case, Plaintiff alleges that Defendants Wainwright, Davis, and Sollenberger were each informed by letter as to the circumstances surrounding the removal of the bottom-bunk restrictions, that each of these defendants was asked to change Policy 8.4, and that none of these defendants intervened on his behalf. Plaintiff, however, alleges nothing to suggest that Defendants Wainwright, Davis, and Sollenberger personally participated in the decision to remove the bottom-bunk restrictions. Rather, Plaintiff argues these defendants implemented and enforced an unconstitutional policy.

Policy 8.4 allows a medical provider like Dr. Kwarteng to remove a housing or work restriction for medical reasons, no matter which provider assigned it, with only a chart review. This policy further authorizes a physical examination to be conducted if the offender challenges the removal of a restriction. Plaintiff fails to offer any allegations to indicate that this policy is unconstitutional or that he otherwise has a constitutional right to be physically examined before any housing restrictions can be removed. The policy itself provides a mechanism for offenders to ask for a physical examination in order to challenge any decision to remove certain housing restrictions based on medical reasons.

Because Plaintiff alleges no facts that Defendants Wainwright, Davis, and Sollenberger participated in the decision to remove Plaintiff's bottom bunk restrictions or implemented an unconstitutional policy, it is respectfully recommended that Plaintiff's claims against these defendants in their official capacities be dismissed as frivolous and/or for failure to state a claim for relief.

## C.    Individual Capacity Defendants

### *(1)  Deliberate Indifference to Health*

Plaintiff alleges that Defendants Kwarteng, Lawson, and the Step II Grievance Coordinator acted with deliberate indifference to his health in connection with the removal of his bottom bunk restrictions and failure to properly investigate his informal and formal grievances.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837.

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any

similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

### Dr. Kwarteng

With regard to Dr. Kwarteng's actions, Plaintiff alleges that: (1) on or about February 22, 2019, Dr. Kwarteng removed Plaintiff's bottom bunk/bottom row restrictions because Plaintiff had asked for his work restrictions to be removed on November 9, 2018; (2) Dr. Kwarteng determined that continuance of the bottom-bunk/bottom restrictions was inconsistent with the removal of work restrictions so that Plaintiff could work in maintenance; (3) Dr. Kwarteng further based his decision on a chart review and not on an actual examination; (4) Dr. Kwarteng's chart review did not consider Plaintiff's original reason for a bottom-bunk restriction and was based on the October 22, 2018 x-rays that did not include an adequate view of Plaintiff's foot; (5) when Dr. Kwarteng removed the bottom-bunk restriction, Dr. Kwarteng was aware that Plaintiff was still a medical fracture boot and cane and that Plaintiff suffered from numerous other maladies, including neuropathy of the left foot. In contrast to Dr. Kwarteng's actions, Plaintiff's allegations reflect that Dr. Goyel on two separate occasions restored Plaintiff's temporary bottom bunk restrictions to a permanent restriction based on Plaintiff's various medical issues.

Taken Plaintiff's allegations as true, he has stated a claim of deliberate indifference to his health against Dr. Kwarteng. Plaintiff's allegations suggest that Dr. Kwarteng may have ignored important information regarding Plaintiff's medical

conditions when making the decision to remove his bottom bunk restrictions. The fact that another medical provider, Dr. Goyel, reinstated permanent bottom-bunk restrictions on two occasions further supports the notion that Dr. Kwarteng may have known of a substantial risk of serious harm to Plaintiff's health but nevertheless disregarded such a risk when removing the bottom-bunk restrictions. Indeed, Plaintiff's allegations reflect that he suffered serious injuries to his feet when attempting to climb down from the top bunk. Accordingly, it is respectfully recommended that Plaintiff's deliberate indifference claim against Dr. Kwarteng be retained.

### Defendants Lawson and the Step II Grievance Coordinator

Plaintiff claims that Defendant Lawson acted with deliberate indifference by failing to relay Plaintiff's formal and informal grievances regarding the removal of his bottom-bunk restrictions for further investigation. Plaintiff claims that the Step II Grievance Coordinator acted with deliberate indifference by failing to adequately investigate Plaintiff's Step II grievance and review the record. Plaintiff specifically complains that the grievance coordinator did not investigate the issue until thirty days after the Step II response was delivered to Plaintiff on May 19, 2019.

Plaintiff alleges nothing to suggest that Defendants Lawson and the Step II Grievance Coordinator had any personal involvement in the decision to remove his bottom-bunk restriction. Plaintiff, therefore, has failed to allege a plausible deliberate indifference claim against Defendants Lawson and the Step II Grievance coordinator in their roles as supervisory officials.

Plaintiff's allegations, at best, point to his dissatisfaction with the actions taken by these defendants in investigating and/or rejecting each of Plaintiff's formal and informal grievances. Such allegations, however, fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Lawson and the Step II Grievance Coordinator be dismissed for failure to state a claim and/or as frivolous.

### *(2) Retaliation*

Plaintiff claims that Dr. Kwarteng engaged in acts of retaliation against him. Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere

conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Plaintiff claims that Dr. Kwarteng retaliated against him for filing a medical grievance against Dr. Kwarteng in June 2018 with the Texas Medical Board. In that medical complaint, Plaintiff alleged that Dr. Kwarteng had failed to take any action to help Plaintiff's low white blood cell count and had lied about the fact that nothing could be done to help. According to Plaintiff, Dr. Kwarteng retaliated against Plaintiff after he found out about the medical grievance by: (1) removing Plaintiff's bottom bunk restriction; and (2) taking a prescribed nutritional supplement away in September 2018 from Plaintiff that helped to raise his low white blood cell count.

Plaintiff's allegations, taken as true, suggest that he exercised his right to file a medical grievance against Dr. Kwarteng and that, but for his decision to file such a medical grievance, Dr. Kwarteng would not have engaged in the retaliatory acts of removing Plaintiff's bottom-bunk restrictions and taking away a nutritional supplement. Accordingly, it is respectfully recommended that Plaintiff's retaliation claims against Dr. Kwarteng be retained.

### *(3) State Law Claims*

Plaintiff raises state law claims of negligence against Defendants Kwarteng, Lawson, and the Step II Grievance Coordinator. Specifically, Plaintiff claims that they acted with negligence against Plaintiff with respect to the removal of his bottom bunk restrictions and subsequent investigation into Plaintiff's formal and informal grievances. Plaintiff asks the Court to exercise supplemental jurisdiction over these state law claims.

Section 1367(a) of Title 28 authorizes a district court to exercise supplemental jurisdiction over all other claims that are so related to the claims that provide the district court with original jurisdiction. 28 U.S.C. § 1367(a). However, that same statute provides that, if the district court dismisses the claims upon which federal court jurisdiction was originally based, especially at the onset of a proceeding, it is prudent to decline to exercise supplemental jurisdiction over any remaining state law claims and to dismiss those claims without prejudice. *Id.* § 1367(c)(3); *Enochs v. Lampasas County,* 641 F.3d 155, 159 (5th Cir. 2011). *See also LaPorte Construc. Co. v. Bayshore Nat'l Bank,* 805 F.2d 1254, 1257 (5th Cir. 1986) (when district court dismisses federal claims at a preliminary stage of litigation, judicial economy argues against exercise of supplemental jurisdiction over state claims).

Because Plaintiff's deliberate indifference claims against Defendants Lawson and the Step II Grievance Counselor are subject to dismissal, the undersigned respectfully recommends that the Court decline to exercise subject matter jurisdiction over Plaintiff's related negligence claims against these defendants. Conversely, as Plaintiff's deliberate indifference claims against Dr. Kwarteng should be retained, the undersigned respectfully

recommends that the Court exercise supplemental jurisdiction over his related negligence claim against Dr. Kwarteng.

## V. RECOMMENDATION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state deliberate indifference and retaliation claims against **DR. ISAAC KWARTENG** in his individual capacity. Accordingly, it is respectfully recommended that these claims be **RETAINED**. It is respectfully recommended further that the Court exercise supplemental jurisdiction over Plaintiff's state law negligence claim against **DR. ISAAC KWARTENG** in his individual capacity and that such claim be **RETAINED**. The undersigned will order service as to **DR. ISAAC KWARTENG** by separate order.

The undersigned further recommends that: (1) Plaintiff's claims for money damages against **DALE WAINWRIGHT, LORIE DAVIS, and DONNA SOLLENBERGER** in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) the Court **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law negligence claims against **TONYA LAWSON AND THE STEP II GRIEVANCE COORDINATOR**; and (3) Plaintiff's claims against the remaining Defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

ORDERED this 4th day of September 2019.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).